PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IRAN DAMARIS ECHAVARRIA MORALES, | ) ) ) | CASE NO.  3:25CV2691 |
| Petitioner, | ) ) ) | |
| v. | ) ) | JUDGE BENITA Y. PEARSON |
| KRISTI NOEM, *etc.*, *et al.*, | ) ) ) | **MEMORANDUM OF OPINION** |
| Respondents. | ) | **AND ORDER** |

Pending is Petitioner Iran Damaris Echavarria Morales' Petition for Writ of Habeas
Corpus and Complaint for Emergency Injunctive Relief (ECF No. 1) under 28 U.S.C. § 2241.
Petitioner is currently detained at the Correctional Center of Northwest Ohio in Stryker, Ohio,
which is located within the Northern District of Ohio.  She moves the Court to order her release
from detention because her detention without the possibility of a bond hearing is
unconstitutional.  The Court has been advised, having reviewed the record, the Petition (ECF No.
1), Respondents' Response to the Petition (ECF No. 4), Petitioner's Brief in Response (ECF No.
5), Declaration of Steven Hackett (ECF No. 7-1), Declaration of Steven Hackett
 (ECF No. 8-2) with Supporting Documents (ECF No. 8-1),[1] and the applicable law.  The Court
has also considered the oral arguments of counsel offered on the record during the Telephonic

---

[1] Petitioner did not file a permissive Supplemental Brief in response to ECF Nos.
7-1 and 8-2.  *See* Minutes of Proceedings dated January 7, 2026.

(3:25CV2691)

Hearing held on January 7, 2026.  For the reasons set forth below, the Court conditionally grants

the Petition.

## I.  Background

Petitioner is a native and citizen of Mexico.  She entered the United States without

admission or parole and without inspection by an immigration officer at an unknown date, time,

and place.  According to Petitioner, she has lived in the United States since August 2002 and has

no criminal record.  Petitioner has five (5) children that are United States citizens, one of whom

is presently serving in the United States Army.  She was arrested by United States Border Patrol

("USBP") on July 12, 2025, and has remained detained since then for a total of 185 days as of the

date of this Memorandum of Opinion and Order with no opportunity to receive bond.

Petitioner was issued a Form I-862, Notice to Appear ("NTA"), charging her with

inadmissibility pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"),

8 U.S.C. § 1182(a)(6)(A)(i), as an immigrant who is present in the United States without having

been admitted or paroled, or who arrived at a time or place not designated by the Attorney

General, and under section 212(a)(7)(A)(i)(I) of the INA, 8 U.S.C. § 1182(a)(7)(A)(i)(I), as

amended, as an immigrant who, at the time of application for admission, is not in possession of a

valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry

document required by the INA, and a valid unexpired passport, or other suitable travel document,

or document of identity and nationality as required under the regulations issued by the Attorney

General under § 211(a) of the INA, 8 U.S.C. § 1181(a).

2

(3:25CV2691)

On August 14, 2025, the Cleveland Immigration Court denied Petitioner's bond redetermination request based on lack of jurisdiction.  On August 28, 2025, Petitioner filed an EOIR-42B, Application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents ("Cancellation Application"), and the Immigration Court scheduled the case for an individual merit hearing on November 3, 2025.  On October 23, 2025, Petitioner filed a motion to continue the individual merit hearing.  Five days later, the Immigration Court denied the motion to continue without prejudice.  At the November 3, 2025 individual merit hearing, Petitioner renewed her motion to continue, and the Immigration Court granted the motion and rescheduled the individual merit hearing to January 20, 2026.  On December 1, 2025, Petitioner filed a second bond redetermination request, which she withdrew eight (8) days later.

## II.

Petitioner argues that absent an order from this Court, she will remain detained without due process of the law for the duration of her bond appeal – the appeal may not be resolved until spring 2026.  *See* Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.  So, the detainees are entitled to notice and opportunity to be heard appropriate to the nature of the case.") (quotation marks and citations omitted).

### A.

Petitioner argues the Court should waive any administrative exhaustion requirement.

There is no statute that requires Petitioner to administratively exhaust her claims.  "Where Congress specifically mandates, exhaustion is required."  McCarthy v. Madigan, 503 U.S. 140,

(3:25CV2691)

144 (1992). But when it is not mandated, the decision to require exhaustion is within the sound

discretion of the court. *Id.*; *see also Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013).

Exhaustion requirements not written into the text of the statute are prudential. *See Perkovic v.

I.N.S.*, 33 F.3d 615, 619 (6th Cir. 1994). Prudential exhaustion is a judge-made doctrine that

enables courts to require administrative exhaustion even when the statute or regulations do not.

*Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019).

"The Sixth Circuit has not formally adopted a standard for determining when prudential

exhaustion applies." *Lopez-Campos v. Raycraft*, --- F. Supp.3d ----, No. 2:25-cv-12486, 2025

WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025), appeal pending No. 25-1965 (6th Cir.). Some

district courts in the Sixth Circuit have adopted the three-factor test set forth by the Ninth Circuit

in *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983), and have thus

required prudential exhaustion when,

> 1) agency expertise makes agency consideration necessary to generate a proper
> record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the
> administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes
> and to preclude the need for judicial review.

*Diego v. Raycraft*, No. 25-13288, 2025 WL 3159106, at *3 (E.D. Mich. Nov. 12, 2025) (citing

*Lopez-Campos*, 2025 WL 2496379, at *4 (citing *Shweika v. Dep't of Homeland Sec.*, No.

1:06-cv-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015))). Here, all three factors

weigh against requiring administrative exhaustion and other district courts in the Sixth Circuit

have held as much in cases with identical legal considerations. *See Lopez v. Raycraft*, No.

4

(3:25CV2691)

4:25CV2449, 2025 WL 3280344, at *3 (N.D. Ohio Nov. 25, 2025) (Pearson, J.); *Diego*, 2025 WL 3159106, at *4.  First, the issues raised in the habeas petition are purely legal in nature and do not require the agency to develop the record.  Second, because Petitioner's habeas petition includes a due process claim, the administrative scheme (*i.e.* appeal to the BIA) is likely futile. And third, administrative review is not likely to change Respondents' position that § 1225(b)(2)(A) applies in this context.  As such, requiring Petitioner to go through the administrative process would be fruitless and a waste of time.

Even if these factors weighed in favor of requiring administrative exhaustion, the Court may still waive administrative exhaustion "when the interests of the individual weigh heavily against requiring administrative exhaustion, or exhaustion would be futile and unable to afford the petitioner the relief he seeks," or when "delay means hardship."  *Lopez-Campos*, 2025 WL 2496379, at *4.  Here, it is clear that administrative exhaustion should be waived.

Petitioner is unlikely to obtain the relief she seeks through the administrative process given Respondents' position in the case at bar and the Board of Immigration Appeals' ("BIA") recent decisions in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) (holding that an immigration judge "lack[s] authority to hear bond requests or to grant bond to aliens who are present in the United States without admission") and *Matter of O. Li*, 29 I&N Dec. 66, 69 (BIA 2025) (holding that "an applicant for admission who is arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings is detained under section 235(b) of the INA, 8 U.S.C. § 1225(b), and is ineligible for any subsequent release on bond under section 236(a) of the INA, 8 U.S.C.

(3:25CV2691)

§ 1226(a)"), which are binding on the agency and the immigration courts, and which

conclusively reject Petitioner's arguments in this case.  *See Shawnee Coal Co. v. Andrus*, 661

F.2d 1083, 1093 (6th Cir. 1981) (recognizing that administrative exhaustion may be excused if it

would be futile); *Contreras-Lomeli v. Raycraft*, No. 2:25-cv-12826, 2025 WL 2976739, at *4

(E.D. Mich. Oct. 21, 2025) ("Waiver based on futility is appropriate when an administrative

agency 'has predetermined the disputed issue' by having a 'clearly stated position' that the

petitioner is not eligible for the relief sought.") (quoting *Cooper v. Zych*, No. 09-CV-11620, 2009

WL 2711957, at *2 (E.D. Mich. Aug. 25, 2009)).

Second, requiring administrative exhaustion would subject Petitioner to hardship.  "Bond

appeals before the BIA, on average, take six months or more to complete."  *Lopez-Campos*, 2025

WL 2496379, at *5 (citing *Rodriguez v. Bostock*, 779 F. Supp.3d 1239, 1245 (W.D. Wash. 2025)

Requiring Petitioner to remain in custody for that period of time " 'would result in the very harm

that the bond hearing was designed to prevent,' that is, prolonged detention without due process."

*Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9,

2025) (quoting *Hechavarria v. Whitaker*, 358 F. Supp.3d 227, 237 (W.D.N.Y. 2019)).

Third, "the Sixth Circuit has also previously held that a due process challenge generally

does not require exhaustion since the BIA lacks authority to review constitutional challenges."

*Contreras-Cervantes v. Raycraft*, No. 2:25-cv-13073, 2025 WL 2952796, at *6 (E.D. Mich. Oct.

17, 2025) (citing *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006); *accord Bangura v.

Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) ("Exhaustion of administrative remedies may not be

(3:25CV2691)

required in cases of non-frivolous constitutional challenges to an agency's procedures.") (citation

omitted)).

Accordingly, the Court waives Petitioner's exhaustion requirements.

**B.**

The final issue in this case concerns Petitioner's ongoing detention pending regular

removal proceedings and the issue of a bond hearing.  For the reasons stated herein, Petitioner's

request for habeas relief is granted.

There are two statutes governing detention of noncitizens during removal proceedings:

8 U.S.C. §§ 1225 and 1226.  Section 1225 applies to "applicants for admission," defined as any

"alien present in the United States who has not been admitted or who arrives in the United

States."  8 U.S.C. § 1225(a)(1).  Specifically, "Section 1225(b)(1) aliens are detained for 'further

consideration of the application for asylum,' and § 1225(b)(2) aliens are in turn detained" until

the conclusion of proceedings under 8 U.S.C. § 1229a.  *Jennings v. Rodriguez*, 583 U.S. 281, 297

(2018).  *See Barrera v. Tindall*, No. 3:25-cv-541, 2025 WL 2690565, at *2 (W.D. Ky. Sept. 19,

2025) (recognizing detention under § 1225 is mandatory except when the noncitizen is "paroled

for urgent humanitarian reasons or significant public benefit").

Conversely, § 1226 serves as a catchall applicable to noncitizens already in the country,

pending the outcome of removal proceedings.  *Jennings*, 583 U.S. at 288.  The statute provides

the Attorney General (who has delegated her authority to the Department of Homeland Security

("DHS") Secretary) with discretion to arrest and detain noncitizens, save for those individuals

that fall under the statutory exceptions set forth in § 1226(c).  *Id.* at 288-89.  Detention of

(3:25CV2691)

noncitizens subject to removal proceedings under § 1226 is discretionary and, therefore, such individuals are entitled to bond hearings.  *Id.*  Noncitizens detained under § 1226(a) may be released on bond or conditional parole.  8 U.S.C. § 1226(a)(2).

Petitioner does not contest that she is currently subject to removal proceedings under § 1225(b)(2) and § 1229a, nor that § 1225(b) requires detention.  *See* ECF No. 1 at PageID #: 4, ¶ 24; PageID #: 7, ¶ 36.  Instead, Petitioner argues that the Due Process Clause under the Fifth Amendment protects her liberty interests, namely, remaining free from custody during her removal proceedings.  *See* ECF No. 1 at PageID #: 6-7.  Respondents insist that the statute requires Petitioner remain in custody without a bond hearing.  ECF No. 4 at PageID #: 37.

As Respondents acknowledge, the undersigned has previously rejected the government's interpretation.  *Lopez*, 2025 WL 3280344, at *4.  Other district courts within the Sixth Circuit to consider Respondents' argument have also not accepted the government's interpretation.[2]  These courts found, as this Court found in *Lopez* and finds here, that noncitizens, like Petitioner, who have spent years in the United States before being detained are subject to § 1226(a)'s discretionary bond provision – not § 1225(b)(2)(A)'s mandatory detention provision.

Petitioner is detained under § 1226(a), not – as Respondents argue – under § 1225(b)(2). Respondents' argument regarding mandatory detention without a bond hearing fails.

---

[2]  *See Morales Chavez v. Dir. of Detroit Field Off.*, No. 4:25CV2061, 2025 WL 3187080, at *7, n. 6 (N.D. Ohio Nov. 14, 2025) (collecting cases); *see also Guzman Cardenas v. Almodovar*, No. 25-CV-9169 (JMF), 2025 WL 3215573, at *2 (S.D.N.Y. Nov. 18, 2025) (citing *Morales Chavez, supra*).

8

(3:25CV2691)

Respondents' misapplication of § 1225(b) to deny Petitioner appeal of her bond determination

violates her due process rights.  As Chief U.S. District Judge Sara Lioi recently stated:

> Putting these statutes together, it would appear that § 1226(a) provides a general rule, while § 1225(b)(2) provides a carveout to that rule.  Section 1226(a) applies broadly to immigrants arrested and detained pending removal determinations. Meanwhile, § 1225(b)(2) carves out from § 1226(a) those immigrants who are (1) either present in the United States without having lawfully entered after inspection and authorization by an immigration officer or arriving in the United States and (2) seeking lawful entry via inspection and authorization by an immigration officer.

*Morales Chavez*, 2025 WL 3187080, at *4.

U.S. Immigration and Customs Enforcement ("ICE") had a longstanding practice of

treating noncitizens taken into custody while living in the United States as detained pursuant to

8 U.S.C. § 1226(a).  *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL

2337099, at *9 (D. Ariz. Aug. 11, 2025).  In *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO,

2025 WL 2581185 (E.D. Cal. Sept. 5, 2025), the court noted that, until recently, DHS interpreted

§ 1226(a) (which permits a bond hearing) "to be an available detention authority for noncitizens [

] placed directly in full removal proceedings under Section § 1229a."  *Id.* at *10 (brackets in

original); *see ICE Memo:  Interim Guidance Regarding Detention Authority for Applications for

Admission*, IMMIGRATION POLICY TRACKING PROJECT, https://immpolicytracking.org/

policies/ice-issues-memo-eliminating-bond-hearings-for-undocumented-immigrants/ (last visited

Jan. 13, 2026) ("Effective immediately, it is the position of DHS that [applicants for admission]

are subject to detention under INA § 235(b) and may not be released from ICE custody except by

(3:25CV2691)

INA § 212(d)(5) parole.  These aliens are also ineligible for a custody redetermination hearing ('bond hearing') before an immigration judge. . . .") (bold removed).[3]

Upon review, the Court concludes § 1225(b)(2) does not apply to Petitioner.  While she is present in the United States without admission, and thus an "applicant for admission," she is not seeking to lawfully enter.  Indeed, it would distort the words of the statute to state that one who has been in the United States since 2002 is seeking to enter it.  *See, e.g.*, *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) ("Noncitizens who are present in the country for years, like [petitioner] who has been here 20 years, are not actively 'seeking admission.' "); *Lopez-Campos*, 2025 WL 2496379, at *6 ("those like [petitioner], who have been here for years upon years and never proceeded to obtain any form of citizenship . . . are not 'seeking' admission").  Rather, as an immigrant arrested and detained while "already in the country[,]" *Jennings*, 583 U.S. at 289, Petitioner falls more appropriately within § 1226(a)'s default rule.  *Morales Chavez*, 2025 WL 3187080 at * (N.D. Ohio Nov. 14, 2025) (citing *Lopez-Campos*, 2025 WL 2496379, at *8 ("There can be no genuine dispute that Section 1226(a), and not Section 1225(b)(2)(A), applies to a noncitizen who has resided in this country for over twenty-six years and was already within the United States when apprehended and arrested during a traffic stop, and not upon arrival at the border.").

---

[3]  The existence of the memorandum was first reported by the Washington Post on July 14, 2025.  Maria Sacchetti & Carol D. Leonnig, *ICE declares millions of undocumented immigrants ineligible for bond hearings*, WASHINGTON POST (July 14, 2025), 2025 WLNR 17364157. The memorandum itself was subsequently leaked by legal advocacy groups.  *See* *Martinez v. Hyde*, 792 F. Supp.3d 211, 217 n. 10 (2025).

(3:25CV2691)

### III.

For the reasons discussed above, the Court conditionally grants the Petition for Writ of Habeas Corpus (ECF No. 1) under 28 U.S.C. § 2241.  The Court Orders Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within 10 business days of the date of the Court's Memorandum of Opinion and Order or, in the alternative, immediately release Petitioner from custody.  The Court also Orders Respondents to file a status report within 14 business days of the date of the Court's Memorandum of Opinion and Order to certify compliance with this Order.  The status report shall inform the Court when the bond hearing occurred, if bond was granted or denied, and if bond was denied, the reasons for the denial.

IT IS SO ORDERED.

_____January 14, 2026_____          _____/s/ Benita Y. Pearson_____
Date                                                                    Benita Y. Pearson
                                                                           United States District Judge

11